ANNA HEINMILLER v. WINSTON BROTHERS, ET AL., Appellants.

**Evidence:** PROOF OF OTHER ACCIDENTS FROM SAME CAUSE. Where plaintiff's horse was frightened, while being driven along the highway towards an elevated railway crossing, by a steam shovel of the railway company on the right of way near the crossing and she was thrown from the carriage and injured, evidence that other ordinarily gentle horses were frightened by the shovel at about the same time and when it was in practically the same position, was competent and not subject to the objection that it introduced a collateral issue.

**Same:** OPINION EVIDENCE. Experienced horsemen may testify as to whether a steam shovel, situated on a railroad right of way near a highway crossing, is calculated to frighten horses of ordinary gentleness while being driven over the crossing.

**Negligence:** OPERATION OF STEAM SHOVEL. It is the duty of a railway company using a steam shovel to so operate the same

as not to unreasonably interfere with the rights of travelers upon the highway, and the fact that the shovel was not within the highway at the time plaintiff's horse was frightened and she received her injuries was not a defense to her action for damages.

**Same.**  An instruction, that if the shovel in question was naturally calculated to frighten horses of ordinary gentleness it was the duty of defendant to exercise ordinary care in its use so as not to unnecessarily endanger persons lawfully on the highway, was not objectionable as emphasizing plaintiff's claim of negligence in operating the shovel so near the highway, and as holding as a matter of law that such use of the shovel required the exercise of any degree of care.

**Ordinary care:**  QUESTION OF FACT.  The question of whether ordinary care in the operation of a steam shovel requires a railway company to warn travelers upon a public highway of the danger is for the jury to determine from all the proven circumstances.

**Special interrogatories.**  A refusal to submit special interrogatories, in a personal injury action, which relate solely to the extent of plaintiff's injury, was not erroneous.

**Negligence as a matter of law.**  Under the evidence in the instant case it cannot be said, as a matter of law, that plaintiff was negligent in failing to look and listen before attempting to drive onto an overhead crossing near which a railway company was operating a steam shovel, or that the defendant was negligently operating the same.

**Excessive damages.**  A verdict for $2,000 damages for a personal injury, where there was no evidence of serious external injury and the evidence rendered it very doubtful if the internal injury relied upon resulted from the accident, is held excessive.

*Appeal from Bremer District Court.*— HON. J. F. CLYDE, Judge.

TUESDAY, JUNE 12, 1906.

SUIT to recover damages for personal injuries.  Trial to a jury, and verdict and judgment for the plaintiff.  The defendants appeal.— *Affirmed* on condition that plaintiff remit a portion of the judgment.

*Hagemann & Farwell,* for appellants.

*Springer, Clary & Condon* and *Sager & Sweet,* for appellee.

SHERWIN, J.— In June, 1902, the defendants were engaged in deepening a cut for the Chicago Great Western Railway Company on its line of railway which had been in use for many years. They used in said work a steam shovel described as being fifty-five feet long, twelve feet high, with a smokestack extending six feet above the car, and with a boom twenty-four or twenty-five feet high. This cut was spanned near its center by a public highway bridge, the floor of which was from twenty-eight to thirty feet above the bottom of the cut. At the precise time that the plaintiff received the injury for which she seeks recovery, the shovel was not in operation; but it was steamed up and was standing on the track on the east side of the cut and north of the highway bridge. During this time the plaintiff approached the bridge from the east in a carriage drawn by a single horse. The horse became frightened before reaching the bridge and suddenly turned around throwing the plaintiff from the carriage and, as she claims, inflicting the injury complained of. The plaintiff averred negligence in having the steam shovel where it was, and negligence in not having some one stationed on the bridge or approach thereto to " warn travelers of the danger of frightening horses and to aid persons whose horses became frightened in passing over the highway and bridge." There is a conflict in the evidence as to the exact location of the shovel with reference to the north line of the highway, some of the testimony tending to show that it was partly in the highway and other witnesses testifying that it was wholly north thereof. Its exact location, however, is not material, as we shall later point out.

The first question discussed by counsel relates to the admission of testimony showing that two other persons with

horses had passed over the same bridge in the forenoon in

1. EVIDENCE:
proof of other
accidents from
same cause.
question, and while the shovel was standing in about the same place that it was when the accident in question occurred, and that their horses were frightened by the shovel. The appellants urge that the evidence was incompetent because introducing a collateral issue that they were not prepared to meet. A determination of the question thus presented involves the consideration of the relative rights of the defendants in their work on the railway and those of the plaintiff in her use of the public highway. The plaintiff, in traveling along the highway, was exercising her lawful right and the defendants in deepening the railway cut were just as clearly within the rights conferred by law upon the railway company, and this is true whether they were operating the shovel or letting it stand idle within or without the limits of the highway. The rule that every person must so use and enjoy his own property as not to unreasonably injure another is applicable to this case, and in deepening the cut the defendants were bound to act reasonably and with due regard for the rights and safety of persons lawfully using the highway. In other words, they were bound to use reasonable care in making the improvement. *Hart v. C. R. I. & P. R. Co.*, 56 Iowa, 166; *Ochiltree v. C. & N. W. Ry. Co.*, 93 Iowa, 628; *Wolf v. Des Moines Elevator Co.*, 126 Iowa, 659.

There can be no liability in this case unless the steam shovel itself, located as it was at the time of the accident, was reasonably calculated to frighten horses ordinarily safe and gentle for road purposes. *Wolf v. Elevator Co.*, *supra*. The plaintiff was, therefore, bound to prove such fact, and we know of no better way of doing so than by testimony tending to show that other ordinarily gentle horses were in fact frightened by the shovel at about the same time and when it was in practically the same position. If such testimony cannot be received, the fact must be proven by the testimony of expert horsemen or the question must be left for

the jury to determine from its own knowledge. Such testimony is held admissible in *Bemis v. Temple,* 162 Mass. 342 (38 N. E. 970, 26 L. R. A. 254), where it is said: "In the present case the only collateral inquiry which could arise is whether a horse called by a witness "an ordinarily safe and gentle horse" comes within that class. Such an inquiry is certainly simple. We think there would be no practical difficulty in receiving and weighing testimony in regard to the conduct of horses which seem to be like ordinary horses in common use. In *House v. Metcalf,* 27 Conn. 631, the same question arose and the court says the plaintiff "had a right, not only to show the facts regarding its size, form, location, exposure to view, and mode of operation from which the jury might infer what effects it would naturally, necessarily, or probably produce, but also to prove what effects it had produced in fact. . . . The inquiry in every such case is not whether the evidence offered is sufficient to prove the fact claimed but whether it tends to prove it." Such evidence has also been held admissible in the following cases: *Brown v. Railway Co.,* 22 Q. B. Div. 391; *Crocker v. McGregor,* 76 Me. 282 (49 Am. Rep. 611); *Darling v. Westmoreland,* 52 N. H. 401 (13 Am. Rep. 55); *Champlin v. Village of Penn Yan,* 34 Hun (N. Y.) 33; *Quinlan v. City of Utica,* 11 Hun (N. Y.) 217 (74 N. Y. 603); *Wooley v. Railroad Co.,* 83 N. Y. 121. See, also, *Hanson v. Chicago, St. P. & K. C. Ry. Co.,* 94 Iowa, 409, and see Wigmore on Evidence, section 461.

The appellants rely on *Hudson v. C. & N. W. Ry. Co.,* 59 Iowa, 581, and other like cases against railway companies and cities, in which it is held that evidence of a prior accident at the same place is inadmissible for the purpose of proving that the way was defective. The decisions are all bottomed on the ground that such testimony concerns collateral facts which the defendants were not bound to meet. We think a distinction may be made between such cases and the instant one. In the former, the ultimate ques-

tions were whether defects existed.    If they did, it was im-
material whether others had been injured thereby, while
here it must be proven that the shovel was calculated to pro-
duce a certain effect on a certain class of animals.    The testi-
mony is not admissible for the purpose of proving that the
plaintiff's horse was frightened by the shovel, but for the
purpose of showing how it affected a certain kind of animals.

The court also permitted witnesses, who were horsemen,
to testify that the shovel was calculated to frighten horses
of ordinary gentleness and this ruling is complained of.    In
*Moreland v. Mitchell County,* 40 Iowa, 394,
2. SAME: opinion evidence. such testimony was held admissible.    This is
conceded by the appellants but they say that
the holding is against the weight of authority and that the
case should be overruled.    It is a rule of evidence that has
been long established in this state and that has the support
of other courts.    See *Clinton v. Howard,* 42 Conn. 294.    It
may be true that an ordinary jury of farmers will know
in a general way the characteristics and habits of horses,
but all farmers are not close observers of the peculiarities
of animals any more than are all men engaged in other
occupations, and we know of no sound reason for overruling
the Moreland Case.

The instructions are criticised generally.    It is said
that it was error to submit the question whether appellants
were negligent in placing the shovel so near the bridge, and
3. NEGLIGENCE: operation of steam shovel: instructions. in a place where it could not be seen by trav-
elers on the highway until they were within
a few feet of the bridge, because the appel-
lants had the lawful right to use the shovel in deepening
the cut.    And further, that it was error to instruct that " it
is not necessary, in order that plaintiff may recover, that
you find the steam shovel was actually within the limits of
the highway," because in no event would there be liability
unless the shovel was within the limits of the highway.
There is no merit in these criticisms, however, for, as we

have already said the defendants were bound to so use the shovel, whether within the limits of the highway or not, as not to unreasonably interfere with the rights of the traveling public. See cases *supra*. *O'Donnell v. C., M. & St. P. Ry. Co.,* 69 Iowa, 102, relied upon by the appellants, is not controlling because there it was expressly held that there was no public highway where the plaintiff crossed the defendant's track, and because the car was on a track where cars were usually stored and in plain view of the plaintiff.

The jury was told that the defendants had the right to deepen the cut and to use for such work the means and implements ordinarily adapted to and used for such pur-
4. SAME.    pose, and further, that if they found the steam shovel an instrumentality ordinarily used for such purpose, the defendants had the right to use it.  It was then said:  " If, however, you find it was naturally calculated to frighten horses of ordinary gentleness, when used at or near the public highway, then it was the duty of the defendants to exercise ordinary care in the use of said steam shovel at or near the public highway so that their use of the same would not be an unnecessary interference with or unnecessarily dangerous to persons making lawful use of the public highway."  It is said that the language of this instruction was prejudicial in that it emphasized the plaintiff's claim that defendants were negligent in placing the shovel where they did, and because it cannot be said, as a matter of law, that one using such a shovel near a public highway is required to exercise any care in respect thereto. We think the instruction above criticism.  It was entirely fair and did no more than to call the jury's attention to the precise points in issue, and if the jury found that the shovel was calculated to frighten horses of ordinary gentleness, it certainly was the defendants' duty, as a matter of law, to exercise ordinary care in its use at that place.

There also was submitted to the jury the question whether the defendants should have provided some one to

warn travelers of the danger.   It was for the jury to say,

5. ORDINARY    under all the facts and circumstances proved,
CARE: question
of fact.       whether ordinary care on the part of the de-
fendants required them to provide such warning, and the in-
struction so stated.   Other instructions are criticised, but an
examination of the entire charge leaves no doubt in our
minds of the fairness and correctness thereof.

The requests made by the appellants, so far as right,
were covered by the instructions given.

There was no error in refusing to submit special in-
terrogatories 1 and 3 asked by the appellants.   They were

6. SPECIAL INTER-  not at all determinative of the case, relating
ROGATORIES.     solely to the extent of the plaintiff's injury.
*Hawley v. Chicago, B. & Q. R. Co.,* 71 Iowa, 717.

The appellants insist that the evidence fails to show any
negligence on their part, and that it does show contributory
negligence on the part of the plaintiff.   It was undoubtedly

7. NEGLIGENCE   the duty of the plaintiff to exercise her facul-
AS MATTER
OF LAW.        ties in approaching the bridge.   That she did
this is fairly shown by her own testimony.   The danger at
an overhead crossing is not as great as at a grade crossing,
and it cannot be said, as a matter of law, that a traveler
must stop to look and listen, neither can it be said, as a
matter of law, that the defendants were not negligent.   Both
questions were for the jury and we cannot interfere with its
finding.

The verdict was for $2,000 and it is strongly urged
that it is excessive.   A very careful examination of the evi-
dence relating to the extent of plaintiff's injury leads us to

8. EXCESSIVE    the conclusion that the contention should be
DAMAGES.       sustained.   There is practically no evidence of
serious external injury.   The only serious injury relied
upon is a deceased condition of the right ovary and tube.
That such condition could not have been produced by the
fall from the buggy, or by any injury then received, is al-
most conclusively shown by the medical testimony produced

by both sides. In view of this we are of the opinion that there should be a retrial of the case unless the plaintiff shall, within thirty days after this opinion is filed, file with the clerk of this court her election in writing to accept a judgment of $1,000. If she does this, the judgment will stand affirmed, otherwise it will be reversed.

*Affirmed on condition.*

DEEMER, J. (dissenting).— Believing that the rule announced in the majority opinion runs counter to the principle announced in *Potter v. Cave,* 123 Iowa, 98, and cases therein cited, as well as others which might be cited, I respectfully dissent.

LADD, J., concurs in this dissent.